**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN PAVLICK, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| REPRO MED SYSTEMS, INC. d/b/a/ KORU MEDICAL SYSTEMS, DON PETTIGREW, and KAREN FISHER, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Brian Pavlick ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Repro Med Systems, Inc. d/b/a KORU Medical Systems ("KORU" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by KORU; and (c) review of other publicly available information concerning KORU.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired KORU securities between August 4, 2020 and January 25, 2021, inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      KORU designs, manufactures, and markets proprietary portable medical devices, primarily for the ambulatory infusion market.

3.      On November 3, 2020, after the market closed, KORU announced its third quarter 2020 financial results, reporting that net sales declined sequentially to $6.1 million.  During the conference call the next day, the Company attributed the lower sales to, among other things, "higher allowances for gross rebates for certain customers" and "payment discounts and distribution fees."

4.      On this news, the Company's stock fell $1.97, or 32%, to close at $4.16 per share on November 4, 2020, on unusually heavy trading volume.

5.      On January 25, 2021, after the market closed, KORU announced its preliminary financial results for fiscal 2020, expecting revenue of approximately $24.0 million, an increase of 3.4% over the prior year.  The Company attributed the results to, among other things, "[s]lower growth in net revenue as a result of strengthening our contractual position with large customers."  In the press release, KORU also announced that its CEO, Donald Pettigrew, resigned, effective immediately.

6.      On this news, KORU's stock price fell $0.80 per share, or 15.5%, to close at $4.33 per share on January 26, 2021, on unusually heavy trading volume.

7.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that: (1) starting in January 2020, KORU ramped up the use of allowances, including growth rebates, to retain key customers and to incentivize growth; (2) as the rebates accrued, the Company's net sales were reasonably likely to decline; and (3) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are located in this District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

13.     Plaintiff Brian Pavlick, as set forth in the accompanying certification, incorporated by reference herein, purchased KORU securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant KORU is incorporated under the laws of New York with its principal executive offices located in Chester, New York.  KORU's shares trade on the NASDAQ exchange under the symbol "KRMD."

15.     Defendant Don Pettigrew ("Pettigrew") was the Company's Chief Executive Officer ("CEO") at all relevant times.

16.     Defendant Karen Fisher ("Fisher") was the Company's Chief Financial Officer ("CFO") at all relevant times.

17.     Defendants Pettigrew and Fisher (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.   The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     KORU designs, manufactures, and markets proprietary portable medical devices, primarily for the ambulatory infusion market.

19.     Much of KORU's products are sold through four distributors, with one distributor frequently making up more than half of KORU's net revenues.

### Materially False and Misleading
### Statements Issued During the Class Period

20.     The Class Period begins on August 4, 2020.  On that day, KORU announced its second quarter 2020 financial results in a press release that stated:

> "We reported a strong Q2 2020, highlighted by a quarterly net sales record of $7.7 million," said Don Pettigrew, President and CEO. . . .

*          *          *

**Q2 2020 Overview**

Net sales increased 44.1% to $7.7 million in Q2 2020 from $5.3 million in last year's second quarter, with growth in all product categories (pumps, needle sets, and tubing). We believe this growth was primarily driven by continued demand increases that included clinical trials, as well as increased purchasing to support the trend towards at-home infusion therapy and in response to the uncertainties created by COVID-19.

Gross profit in Q2 2020 rose 41.3% to $4.9 million from $3.5 million in Q2 2019, primarily due to increased sales volume. Gross margin was 63.7% in Q2 2020 as compared to 65.0% in Q2 2019, mostly due to an increase in overtime costs related to COVID-19 absenteeism. Gross margin was 65.4% when adjusted for overtime.

21.    On August 5, 2020, KORU filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2020, affirming the previously reported financial results. The report also stated that "the Company's disclosure controls and procedures were effective."

22.    The above statements identified in ¶¶ 20-21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) starting in January 2020, KORU ramped up the use of allowances, including growth rebates, to retain key customers and to incentivize growth; (2) as the rebates accrued, the Company's net sales were reasonably likely to decline; and (3) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

23.    The truth began to emerge on November 3, 2020 when the Company reported that net sales declined for third quarter 2020. After the market closed, KORU announced its third quarter 2020 financial results in a press release that stated, in relevant part:

. . . "Our total net sales declined in Q3 2020 primarily attributable to lower clinical trial activity and allowances associated with U.S. sales. Net sales for the first nine months of 2020 rose 19% from the same period last year and volume growth continued within our business."

Mr. Pettigrew continued, "We are continuing to manage our operations to deliver growth by capitalizing on multiple, sustainable long-term growth drivers. ***We remain confident in the strength of our core business, which is predominantly comprised of recurring revenues and excludes clinical trials. Our core business is likely to continue to grow*** given the heightened awareness of PIDD and CIDP diseases, proven and effective immunoglobulin therapy, the benefits of at home treatment, growing addressable patient populations, and an increasing focus by pharmaceutical manufacturers to develop subcutaneous drugs that allow individuals to self-administer these therapies at home. . . ."

\*        \*        \*

**Q3 2020 Financial Results Summary**

Net sales were $6.1 million in Q3 2020 compared to $6.6 million in last year's third quarter.

24.    On November 4, 2020, KORU held a conference call in connection with the third quarter 2020 financial results.  During the call, Defendant Fisher attributed the lower sales to "less U.S. clinical trial sales, higher allowances for gross rebates for certain customers, and payment discount and distribution fees. Our largest distributor under new contract terms also contributed to lower net sales in the 3 months ended September 30, 2020."

25.    During the same call, analysts asked: "[W]hy did the entire allowance come into this quarter? . . . [W]hy wasn't allowances or these rebates back to distributors never an issue a year or 2 years ago?"  Defendant Pettigrew responded that these allowances resulted from "contractual arrangements with [KORU's] customers, both distributors and specialty pharmacies, that incentivize growth."  He continued:

So, some of these are new and a lot of this has to do with time. But growth rebates are accrued for when we become more confident that these thresholds that we have in place will actually be met on an annualized basis.

And we've had several key customers that are trying to meet these thresholds, and therefore, began accruing in Q3 2020. So, while it's a contributor to our Q3 results, it's not the main reason, but it's something that's fairly new into that they were recognized in Q3.

26.     On this news, the Company's stock fell $1.97, or 32%, to close at $4.16 per share on November 4, 2020, on unusually heavy trading volume.

27.     On November 12, 2020, KORU filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2020, stating that "the Company's disclosure controls and procedures were effective." The report also stated:

> Total net sales decreased $0.5 million or 8.1% to $6.1 million for the three months ended September 30, 2020 compared with the same period last year. Net sales decreased primarily due to reduced U.S. clinical trial activity ($0.4 million). Higher allowances consisting of pricing and growth rebates related to certain customers and payment discounts and distribution fees at our largest distributor under new contract terms and lower international sales also contributed to lower net sales in the three months ended September 30, 2020. There were two unusually large orders in the third quarter of 2019, one domestic from our largest distributor and one international. Sales in the third quarter of 2020 included a $1.0 million order from our largest distributor placed early in exchange for a nominal discount, which may impact our net sales for the fourth quarter of 2020.

28.     The above statements identified in ¶¶ 23-25, 27 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) starting in January 2020, KORU ramped up the use of allowances, including growth rebates, to retain key customers and to incentivize growth; (2) as the rebates accrued, the Company's net sales were reasonably likely to decline; and (3) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**<u>Disclosures at the End of the Class Period</u>**

29.     On January 25, 2021, after the market closed, KORU announced its preliminary financial results for fiscal 2020, expecting revenue of approximately $24.0 million, an increase of 3.4% over the prior year. The Company attributed the results to, among other things, "[s]lower growth in net revenue as a result of strengthening our contractual position with large customers."

In the press release, KORU also announced that its CEO, Don Pettigrew, resigned, effective immediately.  KORU stated, in relevant part:

> Repro Med Systems, Inc. dba KORU Medical Systems (NASDAQ: KRMD) ("KORU Medical" or the "Company") a leading medical technology company focused on the development, manufacturing, and commercialization of innovative and easy-to-use specialty infusion solutions that improve quality of life for patients, today reported preliminary financial results for the full year ended December 31, 2020. The Company also announced that seasoned home infusion executive and KORU Medical Board member, Jim Beck, has been appointed Interim Chief Executive Officer, effective immediately. ***Don Pettigrew has resigned as President and CEO, and the Board of Directors has retained a leading executive search firm to assist in the search process to identify a replacement CEO.***
>
> ***Preliminary revenue for full year 2020 is expected to be approximately $24.0 million, an increase of 3.4% compared with $23.2 million in 2019.***
>
> Preliminary cash, cash equivalents and marketable securities are expected to be approximately $27.3 million as of December 31, 2020, up from $5.9 million on December 31, 2019.
>
> Factors that impacted 2020 preliminary results included:
>
> - Significant fluctuations in demand resulting from inventory purchasing by several large customers throughout the year;
>
> - ***Slower growth in net revenue as a result of strengthening our contractual position with large customers;***
>
> - Less than expected international sales and clinical trial partnerships in the second half of 2020; and
>
> - A slowdown in new patient starts due to the effect of state and local guidelines that prevented many individuals from visiting their healthcare professionals in 2020.
>
> "While we recorded revenue growth for the full year 2020, inventory fluctuations and slowdowns in international business, clinical trial activity, and new patient starts impeded our growth," said Jim Beck, Interim Chief Executive Officer. "Although COVID-19 related uncertainties remain, we are confident that the underlying fundamentals of our core business are stable and that we are well-positioned to take advantage of the continued shift from intravenous to subcutaneous infusions for life-saving therapies."

30.    On this news, KORU's stock price fell $0.80 per share, or 15.5%, to close at $4.33 per share on January 26, 2021, on unusually heavy trading volume.

31.    On March 23, 2021, after the market closed, KORU announced its fourth quarter and full year 2020 financial results in a press release, reporting that net sales had been impacted by, among other things, "growth rebates to secure [the Company's] contractual position with several large customers in 2020" and "payment discounts and distribution fees at our largest distributor." The press release stated, in relevant part:

**2020 Full Year Financial Results**

Net sales were $24.2 million for 2020, a 4.4% increase from $23.2 million in 2019. Growth was primarily driven by an increase in product sales volume and higher novel therapies sales of $0.9 million, offset by ***higher allowances which include (i) rebates resulting from the net impact of pricing increases at our largest distributor in the second half of 2019, and (ii) pricing decreases and growth rebates to secure our contractual position with several large customers in 2020. Further increasing allowances were payment discounts and distribution fees at our largest distributor under new contract terms entered into the fourth quarter of 2019.***

                          *        *        *

**Q4 2020 Financial Results**

Net sales were $4.1 million for Q4 2020, a 34.8% decrease from $6.2 million in Q4 2019. ***Net sales were down primarily due to inventory in the channel from the precautionary buying related to COVID-19 in the first half of the year and the large early order placed in the third quarter of 2020,*** as well as lower international sales and novel therapies sales, which currently includes clinical trial sales. ***Higher allowances also contributed to lower net sales in the quarter.***

32.    The same day, the Company held a conference call to discuss the financial results with analysts and investors. During the call, KORU's Interim CEO, Jim Beck, stated that he wanted to "talk about our net sales and ***add some transparency to our business***." (Emphasis added.) He explained:

Net sales growth in all three of these categories was disrupted in 2020. Starting with domestic coordinate sales, the disruptions related to both pricing and volume

dynamics, **beginning January 1, 2020 KORU decided to strengthen its contractual position as a vendor of choice with key customers by providing allowances, including growth rebates.**

\*        \*        \*

At the beginning of the pandemic, these customers, including our largest distributor, increase their inventory of our products. **In the second half of the year and especially the fourth quarter, those customers and distributor reduce their inventories by purchasing less product from us.**

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired KORU securities between August 4, 2020 and January 25, 2021, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers, and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, KORU's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of KORU shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by KORU or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of KORU; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

39.     The market for KORU's securities was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures

to disclose, KORU's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired KORU's securities relying upon the integrity of the market price of the Company's securities and market information relating to KORU, and have been damaged thereby.

40. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of KORU's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about KORU's business, operations, and prospects as alleged herein.

41. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about KORU's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

**LOSS CAUSATION**

42.    Defendants' wrongful conduct, as alleged herein, directly, and proximately caused the economic loss suffered by Plaintiff and the Class.

43.    During the Class Period, Plaintiff and the Class purchased KORU's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**SCIENTER ALLEGATIONS**

44.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding KORU, their control over, and/or receipt and/or modification of KORU's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning KORU, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)**

45.    The market for KORU's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, KORU's securities traded at artificially inflated prices during the Class Period.  On

August 4, 2020, the Company's share price closed at a Class Period high of $10.94 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of KORU's securities and market information relating to KORU, and have been damaged thereby.

46.     During the Class Period, the artificial inflation of KORU's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about KORU's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of KORU and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47.     At all relevant times, the market for KORU's securities was an efficient market for the following reasons, among others:

(a)     KORU shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, KORU filed periodic public reports with the SEC and/or the NASDAQ;

(c)     KORU regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases

on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

> (d)     KORU was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

48.     As a result of the foregoing, the market for KORU's securities promptly digested current information regarding KORU from all publicly available sources and reflected such information in KORU's share price.  Under these circumstances, all purchasers of KORU's securities during the Class Period suffered similar injury through their purchase of KORU's securities at artificially inflated prices and a presumption of reliance applies.

49.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

50.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.    In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.    In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of KORU who knew that the statement was false when made.

## FIRST CLAIM

**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

51.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase KORU's securities at artificially inflated prices.    In

furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for KORU's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about KORU's financial well-being and prospects, as specified herein.

55.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of KORU's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about KORU and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing KORU's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of KORU's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired KORU's securities during the Class Period at artificially high prices and were damaged thereby.

59.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that KORU was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their KORU securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

62.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.    Individual Defendants acted as controlling persons of KORU within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.    As set forth above, KORU and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the

Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  May 7, 2021

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Thomas H. Przybylowski
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

Thursday, April 15, 2021

# Repro-Med Systems, Inc. (KORU) (KRMD)

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.  I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Repro-Med Systems, Inc. ("KORU" or the "Company") and authorize the filing of a motion on my behalf for appointment as lead plaintiff.

3.  I did not purchase or acquire KORU securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired KORU securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  The attached sheet lists all of my transactions in KORU securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

**Name**

**Print Name**
Brian Pavlick

**Signature**

1

**Repro-Med Systems, Inc. d/b/a Koru Medical Systems (KRMD)**                    **Pavlick, Brian**

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Account 1 | | | |
| Purchase | 11/13/2020 | 1500 | $4.0130 |
| Purchase | 11/18/2020 | 1500 | $4.3799 |
| Purchase | 12/8/2020 | 2000 | $5.3298 |
| Purchase | 12/29/2020 | 400 | $5.7150 |
| Purchase | 1/7/2021 | 5000 | $5.5904 |
| Sale | 12/31/2020 | (400) | $6.0309 |
| | | | |
| Account 2 | | | |
| Purchase | 1/4/2021 | 3000 | $5.6374 |
| Purchase | 1/7/2021 | 3339 | $5.5700 |
| Purchase | 1/7/2021 | 100 | $5.5900 |
| Purchase | 1/7/2021 | 81 | $5.5900 |
| Purchase | 1/7/2021 | 200 | $5.5898 |
| Purchase | 1/7/2021 | 100 | $5.5800 |
| Purchase | 1/7/2021 | 1 | $5.5800 |
| Purchase | 1/7/2021 | 79 | $5.5800 |
| Purchase | 1/7/2021 | 100 | $5.5800 |
| Purchase | 1/20/2021 | 3500 | $5.1861 |
| Purchase | 1/21/2021 | 4000 | $5.0999 |
| Sale | 1/6/2021 | (3,000) | $5.8801 |
| Sale | 1/7/2021 | (4,000) | $5.6850 |